FILED
COURT OF APPEALS
DIVISION II

2015 MAR 17 AM 8: 40

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44958-7-II |
| | consolidated with |
| Respondent, | No. 44965-0-II |
| v. | |
| ALLEN ENGLUND, | PUBLISHED IN PART OPINION |
| Appellant. | |

MELNICK, J. — Allen Englund appeals his convictions of two counts of assault in the second degree while armed with a firearm and three counts of unlawful possession of a firearm in the second degree. Englund argues that we should vacate his convictions and remand for a new trial because the trial court abused its discretion by denying Englund's requests to proceed as a self-represented litigant (SRL), failed to bring Englund to trial within the time for trial rule, and denied Englund his right to be present at every critical stage of the proceedings. Englund also makes several assertions in his statement of additional grounds (SAG). In the published portion of the opinion, we hold that the trial court did not abuse its discretion when it denied Englund's requests to represent himself. In the unpublished portion of the opinion, we hold that the trial court did not violate Englund's right to a timely trial, and it did not violate Englund's right to be present at every critical stage of the proceedings. We also reject Englund's SAG assertions. We affirm Englund's convictions.

FACTS

I.    SUBSTANTIVE FACTS[1]

A.    Englund's Criminal History

In 1976, Englund pleaded guilty to burglary in the second degree in Lewis County Superior Court. Because of the conviction, Englund could not legally possess a firearm. On August 19, 2009, a jury found Englund guilty of unlawful possession of a firearm in the first degree in Thurston County Superior Court. The judgment and sentence specifically informed Englund that he could not legally possess a firearm unless a court of record restored his right to do so. On October 13, 2012 and December 16, 2012, Englund could not legally possess any firearm.

B.    Facts Relating to October 2012 Case

Englund owned property with two travel trailers on it. In October 2012, Washington Fish and Wildlife Officer Chris Zuchlewski stopped at Englund's property to investigate two unattended fishing poles. Following the investigation, Zuchlewski ran a records check on the license numbers of the vehicles on the property. From the records check, Zuchlewski determined that because Englund had felony convictions, he could not legally possess firearms.

Later that same day, Zuchlewski drove past Englund's property again and observed Englund holding a rifle with a scope. Zuchlewski and a fellow officer entered Englund's property and placed him under arrest. Following the arrest, Zuchlewski, accompanied by Englund and with his consent, entered one of the trailers on the property and, from under a mattress, seized a loaded .22 caliber rifle equipped with a scope.

---

[1] The State charged Englund in two separate informations. One related to the October 2012 events; the other related to the December 2012 events. The trial court consolidated the cause numbers for trial.

2

C.    Facts Relating to December 2012 Case

Mark Christensen and Arthur Parrish are friends. They know Englund. Christensen drove by Englund's residence every time he drove to Parrish's residence. In mid-December 2012, Christensen and Parrish drove onto Englund's property in Christensen's vehicle and struck the front fender of Englund's vehicle. Englund believed the collision was intentional and he was fearful that Christensen's truck might strike his trailer or injure him. Englund wanted to retaliate against Christensen and Parrish.

Shortly thereafter, Christensen drove his vehicle home from Parrish's residence. While passing Englund's property, he heard a loud boom that sounded like a shotgun blast. Christensen did not stop or examine his vehicle until the next day when he observed what appeared to be shotgun pellets embedded in the driver's side and rear tire of the vehicle. Later that same day, Englund, while on his property, aimed and fired a firearm at a vehicle containing Christensen and Parrish. Christensen and Parrish feared for their lives and, once reaching Christensen's residence, they called law enforcement.

After the call, Sheriff's deputies arrested Englund on his property. In a search incident to arrest, deputies seized a box of 20-gauge shotgun shells from Englund's pocket. The shot found in the 20-gauge shells was size 8, a form of birdshot capable of injuring a human being. In a search pursuant to a warrant, deputies seized a loaded 20-gauge bolt action shotgun from under a blanket in a trailer on Englund's property. Additionally, deputies seized a loaded .22 caliber rifle from Englund's other trailer.

II.   PROCEDURAL HISTORY

On December 26, 2012, Englund appeared for arraignment and pleaded not guilty to each charge.[2] The trial court appointed a lawyer for Englund and set a February 19, 2013 trial date. On January 24, the trial court allowed Englund's lawyer to withdraw for good cause and ordered the Office of Assigned Counsel to appoint a new lawyer for Englund as soon as possible. On January 28, the trial court appointed new counsel for Englund. Two days later, the trial court allowed the new lawyer to withdraw at Englund's request. Englund moved to represent himself. Regarding self-representation, the trial court engaged in a colloquy with Englund:

> THE COURT:  And is it true that you wish to represent yourself?
> ENGLUND:  If I have to.
> THE COURT:  If you have to?
> ENGLUND:  Yeah.
> THE COURT:  Are you making a request to this court that you represent yourself?
> ENGLUND:  Yeah.

Report of Proceedings (RP) (Jan. 30, 2013) at 5. The trial court then entered an order requiring Englund to file a written motion to represent himself. Englund's former lawyer expressed concern that the current February 19 trial date would not allow adequate preparation time for a new lawyer. The State agreed. The trial court engaged in the following colloquy with Englund:

> THE COURT:  Thank you. And I believe—correct me if I'm wrong, Mr. Englund. But I believe the last time that you were before the court asking—or agreeing with the motion of counsel to withdraw from your case, you understood that that may very well mean an extension of dates, including the trial date; right?
> ENGLUND:  No.
> THE COURT:  I'm sorry?
> ENGLUND:  What would you mean an extension? No. What's that?
> THE COURT:  You understood that your agreement with the request to allow your counsel to withdraw may mean that the trial date would continue out further than when it currently is.
> ENGLUND:  If it has to be—a speedy trial is 60 days.
> THE COURT:  I'm sorry. I can't hear you.

---

[2] Englund was only in custody for the charges related to the December 2012 case.

> ENGLUND: It should still be a fast, speedy trial, 60 days.
> THE COURT: So you are not in agreement with the continuation of the trial?
> ENGLUND: No.
> THE COURT: You are not?
> ENGLUND: No.

RP (Jan. 30, 2013) at 8-9. Because a determination still needed to be made concerning Englund's legal representation, the trial court found good cause to continue the jury trial in the December 2012 case to the week of March 11, 2013.

The trial court set a February 12 status review hearing regarding counsel. Englund appeared at the hearing and again said he wanted to represent himself.[3] Englund had not yet filed a written motion to represent himself. The trial court engaged in a colloquy with Englund, asking him if he understood the nature of all the charges against him.[4] Englund said yes. However, Englund interjected throughout the colloquy that he had "gun rights." RP (Feb. 12, 2013) at 7. Additionally, the trial court asked Englund if he was familiar with the rules of evidence and criminal procedure:

> THE COURT: Are you familiar with the rules of evidence?
> ENGLUND: Yes.
> THE COURT: How are you familiar with the rules of evidence?
> ENGLUND: The evidence ain't against me. It's the ones that made the assault, not me.
> . . . .
> THE COURT: Are you familiar with the rules of criminal procedure?
> ENGLUND: Yeah.
> THE COURT: And how are you familiar with the rules of criminal procedure?
> ENGLUND: Because I didn't do nothing wrong. I ain't the type to go to somebody else's place and step out of line.
> . . . .

---

[3] The record shows a lawyer appeared with Englund at this hearing. However, the lawyer said he did not represent Englund.

[4] At this point, the charges arising from both the October 2012 and December 2012 incidents were discussed.

> THE COURT: Do you have a legal theory you wish to argue to the [c]ourt that you believe your lawyer would not argue on your behalf?
> ENGLUND: No.
> . . . .
> THE COURT: At this point, I need to advise you that, in the [c]ourt's opinion, you would be far better served if you were defended by a trained lawyer than representing yourself. It's unwise to represent yourself. You face extremely stiff penalties if, in fact, you are found guilty. You are not familiar with the law.

RP (Feb. 12, 2013) at 9-11. The trial court also advised Englund he could not argue at trial that he had the right to possess a firearm. The trial court entered a written order denying Englund's request to represent himself. Based on its colloquy with Englund, the trial court found that Englund "would not have the capacity to understand and follow the procedural rules in this matter and would thereby be unable to provide for his defense." Clerk's Papers (CP) at 52. The trial court ordered the Office of Assigned Counsel to appoint a lawyer to represent Englund.

Eight days later, at a previously set review hearing, Englund's new appointed lawyer appeared, but Englund was not transported to the courtroom. His lawyer presented the trial court with a stipulated competency evaluation order. The court signed it. Because Englund refused to cooperate with a competency evaluation at the jail, the trial court subsequently entered an amended order for the evaluation to occur at Western State Hospital.

On May 2, the trial court found Englund legally competent to stand trial. At that time, the trial court set a new trial date for May 28. During the hearing, Englund's lawyer advised the court that Englund did not believe she represented him. Englund addressed the court:

> THE COURT: . . . Mr. Englund, you wish to address the court?
> ENGLUND: What do you mean?
> THE COURT: Do you have a question?
> ENGLUND: Yeah. You're sitting there trying to put me up for trial, and it's way past the 60-day trial, and I'm not the one that made this all (indiscernible). So I didn't go to somebody else's place and assault them at their place.

RP (May 2, 2013) at 5.

On May 13, Englund's lawyer submitted a written motion for reconsideration of the February 12, 2013 order denying Englund's motion to represent himself. She further moved for an order to allow Englund to represent himself. Accompanying the motion was the lawyer's declaration in which she outlined Englund's intent to not cooperate in any way with assigned counsel. She also outlined the defenses Englund planned to raise if permitted to proceed as an SRL. At the same time, the lawyer provided Englund with a three-page letter containing relevant legal research and an analysis of his case. She offered to provide assistance to Englund in the capacity of standby counsel.

Three days later, the trial court had another hearing and allowed Englund to address the court. The trial court did not, however, engage in further colloquy with Englund, noting that it did not have the transcript from the colloquy on February 12, 2013. In its written order, the trial court denied Englund's motion for reconsideration on the grounds that it was not filed within 10 days of the entry of the order. Additionally on that day, the trial court consolidated the October 2012 and December 2012 causes for trial.

On May 24, the State amended the charges in both informations to unlawful possession of a firearm in the second degree, two counts of assault in the second degree, and two counts of unlawful possession of a firearm in the second degree. After his arraignment, Englund, by and through his lawyer, filed a written waiver of a jury trial. On May 29, 2013, the trial court held a bench trial and found Englund guilty of all counts. The trial court entered separate judgments and sentences for each cause.

Englund appeals his convictions under both cause numbers. We consolidated the cases on appeal.

ANALYSIS

I.    MOTIONS FOR SELF REPRESENTATION

We review a trial court's denial of the right to represent oneself for an abuse of discretion. *In re Pers. Restraint of Rhome*, 172 Wn.2d 654, 667, 260 P.3d 874 (2011). The "ad hoc," fact-specific analysis of waiver of counsel questions is best assigned to the discretion of the trial court. *State v. Hahn*, 106 Wn.2d 885, 900, 726 P.2d 25 (1986). A trial court abuses its discretion if its "decision is manifestly unreasonable or 'rests on facts unsupported in the record or was reached by applying the wrong legal standard.'" *State v. Madsen*, 168 Wn.2d 496, 504, 229 P.3d 714 (2010) (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).[5]

Article 1, section 22 of the Washington Constitution[6] explicitly guarantees criminal defendants the right to self-representation. *Madsen*, 168 Wn.2d at 503. The Sixth Amendment to the United States Constitution implicitly guarantees this right. *Faretta v. California*, 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). Courts regard this right as "so fundamental that it is afforded despite its potentially detrimental impact on both the defendant and the administration of justice." *Madsen*, 168 Wn.2d at 503. Improper denial of the right to represent oneself requires reversal regardless of whether prejudice results. *Madsen*, 168 Wn.2d at 503.

Englund made three separate motions to proceed as an SRL. Timeliness of this type of motion is determined on a continuum. *State v. Barker*, 75 Wn. App. 236, 241, 881 P.2d 1051 (1994). When a trial court delays ruling on the motion but is put on notice of a defendant's desire to proceed as an SRL, the timeliness of the request is measured from the date of the initial request.

---

[5] Although the dissent recognizes these standards of review, it instead reviews the record de novo, interprets the facts de novo, and fails to give deference to the trial court judge who communicated with and observed Englund's demeanor as well as his verbal and nonverbal skills.

[6] "[T]he accused shall have the right to appear and defend in person."

*State v. Breedlove*, 79 Wn. App. 101, 109, 900 P.2d 586 (1995). Thus, the timeliness of Englund's request to represent himself is measured from the date of his first request: January 30, 2013. However, we examine each motion separately and independently. *Madsen*, 168 Wn.2d at 505. We hold that the trial court did not improperly deny Englund's right to self-representation.

A.    First Motion

Englund argues that the trial court abused its discretion by requiring him to file a written motion to represent himself. We disagree. At the hearing, Englund clearly indicated that he wanted to represent himself. In response, the trial court ordered Englund to file a written motion. Englund argues this directive is a denial of his request. On the contrary, the trial court did not deny Englund's request, it merely deferred ruling until the motion was properly before the court.

Englund further argues that the trial court abused its discretion by "failing to exercise it." Appellant's Br. at 21. Englund made his request to be an SRL in the midst of his counsel's motion to withdraw. A trial court must be allowed the discretion to manage its own affairs. *Madsen*, 168 Wn.2d. at 506. When a trial court is reasonably unprepared to immediately consider a motion, it properly exercises discretion by delaying its ruling. *Madsen*, 168 Wn.2d at 506. Here, the trial court had no notice of the motion and required more time to consider it. The trial court did not abuse its discretion.

B.    Second Motion

After engaging in a colloquy with Englund, the trial court found that Englund lacked the capacity to aid in his own defense and denied the request to proceed as an SRL. Englund argues that capacity is not a criterion for the trial court's consideration. We hold that the trial court properly considered Englund's capacity and it is a proper ground the trial court can consider to deny a defendant SRL status. *See Rhome*, 172 Wn.2d at 659-60.

The right to self-representation is not self-executing. *State v. Modica*, 136 Wn. App. 434, 441, 149 P.3d 446 (2006), *aff'd*, 164 Wn.2d 83, 186 P.3d 1062 (2008). Although the trial court must honor a properly made request for self-representation, a trial court must also indulge in "'every reasonable presumption' against a defendant's waiver of his or her right to counsel." *Madsen*, 168 Wn.2d at 504 (quoting *In re Det. of Turay*, 139 Wn.2d 379, 396, 986 P.2d 790 (1999)). "The grounds that allow a court to deny a defendant the right to self-representation are limited to a finding that the defendant's request is equivocal, untimely, involuntary, or made without a general understanding of the consequences." *Madsen,* 168 Wn.2d at 504-05. Such a finding must be based on an "identifiable fact." *Madsen,* 168 Wn.2d at 505.

States may constitutionally deny a defendant SRL status "'on the ground that [he] lacks the mental capacity to conduct his trial defense.'" *Rhome*, 172 Wn.2d at 660 (quoting *Indiana v. Edwards*, 554 U.S. 164, 174, 129 S. Ct. 2379, 171 L. Ed. 2d 345 (2008)). Therefore, trial courts may limit the right to self-representation when there is a question about the defendant's competency to act as his own counsel. *Rhome*, 172 Wn.2d at 661-62. Additionally, the state constitutional right to self-representation "may not properly be construed as an absolute right in all cases." *State v. Kolocotronis*, 73 Wn.2d 92, 98, 436 P.2d 774 (1968).

Competency to stand trial "does not automatically equate to a right to self-representation" because the standard for determining competency to stand trial assumes the defendant will *"assist* in his defense, not conduct his defense." *Rhome*, 172 Wn.2d at 660 (citing *Edwards*, 554 U.S. at 174-75). Self-representation undercuts the right to a fair trial when the defendant's lack of capacity to conduct a defense threatens an improper conviction. *Edwards*, 554 U.S. at 176-77. Here, Englund clearly demonstrated a lack of capacity to conduct a defense. When asked why he wanted to proceed as an SRL, Englund could not articulate why he did not want a lawyer to represent him.

10

Additionally, Englund was unresponsive to the trial court's inquiry into his familiarity with the rules of evidence and criminal procedure.

The trial court correctly found that Englund lacked capacity to aid in his own defense. CP at 52. Taken as a whole, the record of this hearing contains sufficient support for the trial court's finding. We defer to the trial court's finding because it had the opportunity to observe and consider Englund's demeanor and nonverbal conduct, as well as his verbal responses during the colloquy. *See State v. Floyd*, 178 Wn. App. 402, 410, 316 P.3d 1091 (2013), *review denied*, 180 Wn.2d 1005, 321 P.3d 1206 (2014); *State v. Read*, 163 Wn. App. 853, 864, 261 P.3d 207 (2011). Englund could not understand the very basic questions the trial court posed. As an example, Englund's statements in response to the trial court's inquiry about whether he understood the nature of the charges against him illustrate unresponsiveness:

> THE COURT: And under case number 12-1-01752-6, do you understand that you are charged with one count of unlawful possession of a firearm in the second degree?
> ENGLUND: I have gun rights.
> THE COURT: I'm asking if you understand that in 12-1-01752-6, that you are charged with one count of unlawful possession of a firearm in the second degree. Do you understand that is the charge before the [c]ourt?
> ENGLUND: Yeah, but you're talking around—I have gun rights.

RP (Feb. 12, 2013) at 6. Englund remained so focused on his belief that he had a right to possess a firearm that he did not reply to the trial court's questions with relevant answers. This behavior continued throughout the remainder of the colloquy. Substantial evidence supports the trial court's ruling that Englund lacked capacity to aid in his own defense.

A trial court may not deny a motion for self-representation based on grounds that it would be "detrimental to the defendant's ability to present his case" or concerns that proceedings would be less efficient and orderly. *Madsen*, 168 Wn.2d at 505. A defendant's "unfamiliar[ity] with

11

legal rules" does not justify a trial court's denial of the right to proceed as an SRL. *Madsen*, 168 Wn.2d at 509. "A court may impose lesser sanctions for failure to adhere to proper procedures, but 'must not sacrifice constitutional rights on the altar of efficiency.'" *Floyd*, 178 Wn. App. at 409 (quoting *Madsen*, 168 Wn.2d at 509). Here, although the trial court noted that Englund would be better served if represented by a lawyer and that Englund is not familiar with the law, those statements are most logically read as factors that contributed to the trial court's conclusive finding that Englund lacked capacity to provide for his own defense. Therefore, the trial court's finding was not based on the improper legal standard that Englund is unfamiliar with legal rules. Rather, by explicitly finding that Englund lacked capacity, the trial court properly exercised its discretion to deny Englund's motion to proceed as an SRL.

### C. Third Motion

Englund argues that because he was found competent to stand trial, the trial court abused its discretion by refusing to engage in further colloquy with Englund and by refusing to consider his renewed request to represent himself at the hearing on May 16, 2013. Englund's request took the form of a motion for reconsideration. The grant or denial of a motion for reconsideration is within the sound discretion of the trial court. *Lilly v. Lynch*, 88 Wn. App. 306, 321, 945 P.2d 727 (1997). As such, it will be overturned only upon an abuse of discretion. *Lilly*, 88 Wn. App. at 321.

Englund incorrectly equates competency to stand trial with a right to self-representation. Br. of Appellant at 26. As discussed above, the two are not the same. *Rhome*, 172 Wn.2d at 660. "A trial court may consider a defendant's mental health history and status when competency has been questioned, even where the defendant has been found competent to stand trial." *Rhome*, 172 Wn.2d at 667. Here, the trial court relied on all of the information it had regarding the defendant's

12

mental health history, along with its own observations. None of the information evidences the trial court abused its discretion. In addition, the trial court relied on CR 59(b) and found that the motion for reconsideration was untimely. The trial court did not abuse its discretion by relying on its previous encounters with Englund to deny the motion for self-representation and by refusing to engage in further colloquy with Englund. We affirm the trial court.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

I.      TIME FOR TRIAL (CrR 3.3)

Englund argues that his CrR 3.3 rights were violated because the trial court continued the trial date over his objection.[7] We hold that no violation occurred because the continuance was properly granted and the time for trial was properly computed considering applicable excluded periods.

"'[A] trial court's grant or denial of a motion for a CrR 3.3 continuance or extension will not be disturbed absent a showing of a manifest abuse of discretion.'" *State v. Cannon*, 130 Wn.2d 313, 326, 922 P.2d 1293 (1996) (quoting *State v. Silva*, 72 Wn. App. 80, 83, 863 P.2d 597 (1993)). "Discretion is abused only where it is exercised on untenable grounds or for untenable reasons." *State v. Williams*, 104 Wn. App. 516, 521, 17 P.3d 648 (2001). The application of a court rule to particular facts is a question of law. *State v. Carlyle*, 84 Wn. App. 33, 35, 925 P.2d 635 (1996). Therefore, we review an alleged violation of a court rule de novo. *State v. Kenyon*, 167 Wn.2d 130, 135, 216 P.3d 1024 (2009).

---

[7] Englund raises the identical issue in his statement of additional grounds. We address it here.

13

A.     Continuance—Excluded Period

Under CrR 3.3(b)(1)(i), an in-custody defendant must be brought to trial within 60 days after arraignment. When a defendant is not brought to trial before the expiration of the time for trial limitation, the trial court must dismiss the charges with prejudice. CrR 3.3(h). Specific time periods are excluded from the 60-day calculation, including continuances granted for good cause. CrR 3.3(e). The trial court may continue the trial date when "such continuance is required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense." CrR 3.3(f)(2). The reasons for the continuance must be on the record or in writing. CrR 3.3(f)(2).

Here, Englund's arraignment occurred on December 26, 2012 and he remained in custody. Therefore, his time for trial would have expired on February 24, 2013, 5 days after the time actually set for his trial. On January 30, 2013, the trial court found good cause to continue the trial to the week of March 11, 2013. Englund argues that "[t]he sole basis to justify the court's action [continuing the trial date] was its refusal to allow [Englund] to proceed to trial on the date already set representing himself." Appellant's Br. at 29. This claim is unsupported by the record. The trial court concluded that it would be unreasonable for a new lawyer or Englund to prepare adequately for a trial on February 19, 2013.

Thus, the trial court found good cause to continue the trial to the week of March 11, 2013, and it included the bases for its ruling in writing. This finding is well within the trial court's discretion. Englund did not claim any prejudice by the delay. Therefore, we hold that the trial court did not violate CrR 3.3 or manifestly abuse its discretion by continuing Englund's trial date to the week of March 11, 2013.

B.      Competency Evaluation—Excluded Period

All proceedings relating to the competency of a defendant to stand trial are excluded from the time for trial rule, beginning on the date when the competency examination is ordered and terminating when the court enters a written order finding that the defendant is competent to stand trial. CrR 3.3(e)(1). CrR 3.3(b)(5) extends the time for trial 30 days following the end of a period excluded for competency proceedings pursuant to CrR 3.3(e). On February 20, 2013, the court entered an order to evaluate Englund for competency to stand trial. On May 2, 81 days later, the court found Englund competent to stand trial. Pursuant to CrR 3.3(b)(5) and CrR 3.3(e), the 81-day period between the order and the finding is excluded from speedy trial calculations, extending Englund's speedy trial date to June 4, 2013. His trial was held on May 28 and May 29. Thus, Englund's trial date did not violate the time for trial rules.

C.      Objection and Motion

Even if we assume the trial court set Englund's trial outside the time for trial limits, Englund did not properly object. "A party who objects to the date set upon the ground that it is not within the time limits prescribed by [CrR 3.3] must, within 10 days after the notice is . . . given, move that the court set a trial within those time limits." CrR 3.3(d)(3). "A party who fails, for any reason, to make such a motion shall lose the right to object that a trial commenced on such a date is not within the time limits prescribed by this rule." CrR 3.3(d)(3); *See State v. Chavez-Romero*, 170 Wn. App. 568, 581, 285 P.3d 195 (2012), *review denied*, 176 Wn.2d 1023 (2013). Englund did not move the court to reset trial dates. Therefore, Englund's claim that his time for trial rights were violated fails. We hold that the court held Englund's trial in a timely fashion.

## II.    RIGHT TO BE PRESENT

Englund argues that the trial court violated his right to be present at every critical stage of the proceedings under Washington Constitution, article 1, section 22.[8] Englund argues that the hearing in which the competency evaluation was ordered is a critical stage in the proceedings. We hold that Englund did not have a constitutional right to be present at this hearing.

Whether a defendant's constitutional right to be present has been violated is a question of law, we review de novo. *State v. Irby*, 170 Wn.2d 874, 880, 246 P.3d 796 (2011). "[I]n Washington, the right to appear and defend as guaranteed by article I, section 22 of the Washington Constitution is triggered at any time during trial that a defendant's substantial rights may be affected." *State v. Jones*, 175 Wn. App. 87, 107, 303 P.3d 1084 (2013). The defendant's right to be present includes situations in which he may "*actively* contribute to his own defense." *State v. Bennett*, 168 Wn. App. 197, 203, 275 P.3d 1224 (2012) (emphasis in original). "In general, a stage of trial is 'critical' if it presents a possibility of prejudice to the defendant." *State v. McCarthy*, 178 Wn. App. 90, 97, 312 P.3d 1027 (2013) (quoting *State v. Hawkins*, 164 Wn. App. 705, 715, 265 P.3d 185 (2011)). Additionally, "[a] critical stage is one 'in which a defendant's rights may be lost, defenses waived, privileges claimed or waived, or in which the outcome of the case is otherwise substantially affected.'" *State v. Heddrick*, 166 Wn.2d 898, 910, 215 P.3d 201 (2009) (quoting *State v. Agtuca*, 12 Wn. App. 402, 404, 529 P.2d 1159 (1974)), *as corrected* (Sept. 15, 2009).

Englund argues that a request for a competency evaluation constitutes a critical stage because the court made a factual determination on the sufficiency of the evidence to order a competency evaluation. We hold that Englund did not have a constitutional right to be present at

---

[8] In criminal prosecutions, "the accused shall have the right to appear and defend in person."

16

the hearing because Englund's rights were not substantially affected by the order for a competency evaluation.

In support of his argument, Englund cites to the definition of "critical stage[ ]" found in *State v. Bremer*: a defendant has a "right to be present when evidence is being presented or whenever the defendant's presence has 'a relation, reasonably substantial,' to the opportunity to defend against the charge." 98 Wn. App. 832, 834, 991 P.2d 118 (2000) (quoting *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 306, 868 P.2d 835 1994), *as amended* March 10, 1994)). In *Bremer*, Division Three of this court held that the defendant did not have a right to be present during discussion of proposed jury instructions because his presence had no relation to the opportunity to defend against the charge he faced. 98 Wn. App at 835.

Here, Englund's absence from the hearing on February 20, 2013 had no relation to his opportunity to defend against the charges. Englund does not argue that his absence from the hearing where the trial court ordered the competency evaluation affected the outcome of the challenged convictions or resulted in prejudice.[9] Englund does not argue that the court abused its discretion in ordering the competency evaluation; nor does Englund challenge the competency evaluation itself. *See State v. Thomas*, 75 Wn.2d 516, 517–18, 452 P.2d 256 (1969) (The determination of whether a competency examination should be ordered rests generally within the discretion of the trial court.). Englund was ultimately found competent to stand trial. He challenges only the outcome of the trial, and he does not argue that the order of the competency

---

[9] The state constitutional right to appear and defend is subject to harmless error analysis. *Irby*, 170 Wn.2d at 886. The State has the burden of proving the error was harmless, and must do so beyond a reasonable doubt. *Irby*, 170 Wn.2d at 886. But the defendant must at least raise the possibility of prejudice. *Jones*, 175 Wn. App. at 108.

evaluation affected that outcome. Therefore, we hold that Englund did not have a constitutional right to be present at the hearing ordering the competency evaluation.

III.   STATEMENT OF ADDITIONAL GROUNDS

Englund raises several issues in his SAG. Englund appears to assert that law enforcement officers entered his land without probable cause or a warrant, he never lost the right to possess a firearm, his time for trial rights were violated, and charges should have been brought against Christensen and Parrish. We have addressed the time for trial issue above and hold that the remaining claims lack merit.

   A.   Probable Cause and Warrant

Englund asserts, in full, "No Reason No Warr[a]nt." SAG at 6. Although RAP 10.10(c) does not require Englund to refer to the record or cite authority, he is required to inform us of the "nature and occurrence of alleged errors." These assertions of error are too vague to allow us to identify the issues and we do not reach them.

   B.   Right to Possess a Firearm

Englund asserts that he never lost the right to possess a weapon following his 1976 felony conviction of burglary in the second degree and his 2009 conviction of unlawful possession of firearm in the first degree. Under the United States and Washington Constitutions, the law is well established that the right to bear arms is subject to reasonable regulation. *State v. Krzeszowski*, 106 Wn. App. 638, 641, 24 P.3d 485 (2001). One such regulation is prohibition of possession of firearms by convicted felons. *Krzeszowski* 106 Wn. App at 641.

Englund further asserts that the trial court "let [him] keep [his] gun rights" following his 1976 conviction. SAG at 2. This is not contained in the record on appeal, and we cannot consider matters outside the record on direct appeal. We cannot consider matters outside the record on a

18

direct appeal. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995) ("If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition."). Furthermore, following Englund's 2009 conviction for unlawful possession of a firearm in the first degree, Englund could not legally possess a firearm. Former RCW 9.41.040(1)(a) (2009). Therefore, we reject Englund's contention that he could legally possess a firearm on October 13, 2012 and December 16, 2012.

C.      Charges Against Christensen and Parrish

Englund contends that the State should have initiated charges against Christensen and Parrish, not Englund. SAG at 1, 5, 6, and 7. This issue requires evidence or facts not existing in the record on appeal and does not affect Englund's convictions. Therefore, we do not address it. *McFarland*, 127 Wn.2d at 335.

We affirm Englund's convictions.

Melnick, J.

I concur:

Bjorgen, A.C.J.

MAXA, J. (dissenting) — I agree with the majority's decisions regarding Allen Englund's time for trial and right to be present arguments, and with the majority's rejection of Englund's statement of additional grounds (SAG) assertions. However, I dissent because the majority erred in concluding that the trial court properly denied Englund's request to represent himself at trial.

After engaging in a colloquy with Englund, the trial court concluded as follows:

> At this point, I need to advise you that, in the Court's opinion, you would be far better served if you were defended by a trained lawyer than representing yourself. It's unwise to represent yourself. You face extremely stiff penalties if, in fact, you are found guilty. You are not familiar with the law.
>
> . . . You clearly don't know the rules of evidence based upon the statements you made to the Court. It does not appear that you know the rules of criminal procedure, and because you're facing such a stiff penalty, it appears that you would be better served by being represented by a lawyer.
>
> . . . I do not find that you have the ability to represent yourself in this matter. I'm denying your right to represent yourself.

Report of Proceedings (RP) (Feb. 12, 2013) at 11-12. The trial court then entered a handwritten order denying defendant's motion to represent himself, which contained a single finding: "the defendant would not have the capacity to understand and follow the procedural rules in this matter and would thereby be unable to provide for his defense." Clerk's Papers (CP) at 52.

It is clear from the oral comments and implied by the written order that the trial court concluded that Englund did not have the *ability* to effectively represent himself. As the majority recognizes, this is not a proper basis for denying a defendant's constitutional right to defend himself. But the majority interprets the written order as a finding that Englund lacked the *mental capacity* to represent himself. Even if the trial court's order could be interpreted this way, the record does not support such a finding.

20

1. Defendant's Ability to Represent Himself

The trial court's oral conclusion that Englund would be "better served," RP (Feb. 12, 2013) at 11, by a lawyer's representation is an improper basis for denying a defendant's constitutional right to represent himself. Our Supreme Court in *State v. Madsen* emphasized that, "[a] court may not deny a motion for self-representation based on grounds that self-representation would be detrimental to the defendant's ability to present his case." 168 Wn.2d 496, 505, 229 P.3d 714 (2010).

Similarly, the trial court's statement that Englund was not familiar with the rules of evidence or criminal procedure is not a proper basis for denying a defendant's constitutional right to represent himself. The court in *Madsen* stated that a trial court "may not deny pro se status merely because the defendant is unfamiliar with legal rules." *Id.* at 509. This statement makes it clear that whether or not a defendant is familiar with legal rules is not material to addressing a request for self-representation. *Id.* The court in *In re Personal Restraint of Rhome* further stated that the trial court may not consider the defendant's skill and judgment. 172 Wn.2d 654, 663, 260 P.3d 874 (2011).

Finally, the record shows that Englund was stubborn and unresponsive when responding to the trial court's questions about his request to represent himself. However, the fact that a defendant's behavior impedes the orderly administration of justice is not a sufficient basis for denying a defendant's request to represent himself. *Madsen*, 168 Wn.2d at 509. As the majority recognizes, "[c]ourts must not sacrifice constitutional rights on the altar of efficiency." *Id.* And the fact that the defendant is "obnoxious" also is not a proper basis for denying self-representation. *Id.*

21

In summary, a defendant's *ability* to represent himself is irrelevant in addressing a motion for self-representation. As long as the defendant's waiver of his constitutional right to counsel is knowing, voluntary, and intelligent, *id.* at 504-05, a defendant is free to exercise his constitutional right to represent himself even if exercising that right is not in his best interests.

2. Defendant's Mental Capacity to Represent Himself

On the other hand, as the majority opinion points out, a finding that a defendant is not mentally competent to represent himself is a proper ground for denying a request for self-representation. *Rhome*, 172 Wn.2d at 659-60, 669. The question is whether the defendant " 'lacks the mental capacity to conduct his trial defense.' " *Id.* at 660 (quoting *Indiana v. Edwards*, 554 U.S. 164, 174, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008)).

Here, the trial court did not find that Englund lacked the mental capacity to conduct his trial defense. Instead, the trial court found that Englund "would not have the capacity to understand and follow the procedural rules in this matter." CP at 52. The majority opinion apparently concludes that this finding is equivalent to a finding on mental incapacity, and that the record supports this finding. I disagree.

The majority points to three factors that it claims support the trial court's conclusion that Englund lacked the mental capacity to represent himself. First, the majority asserts that "Englund could not understand the very basic questions the trial court posed." Majority at 11. As an example, the majority points to Englund's unresponsiveness when the trial court asked questions about self-representation and the fact that he remained focused on his belief that he had a right to possess a firearm. However, this portion of the record does not suggest that Englund did not understand the trial court's questions. The record shows only that he did not *want* to respond, and instead wanted to talk about his gun rights. The fact that a defendant fails to

22

respond to a trial court's questions, is fixated on an issue that he wants to address, or is stubborn or even obnoxious provides no evidence that he lacks the mental capacity to represent himself.

Second, the majority states that Englund was unable to articulate why he did not want a lawyer to represent him. The majority does not cite any authority for the proposition that a defendant's failure to articulate why he wants to exercise his constitutional right of self-representation is evidence that he lacks the mental capacity to represent himself. A defendant has a constitutional right to self-representation, whether or not he can articulate a reason.

Third, the majority relies on the fact that Englund was unresponsive to the trial court's inquiry into his familiarity with the rules of evidence and criminal procedure. However, once again the record indicates that Englund did not respond because he did not want to, not that he lacked the mental capacity to respond. And a defendant's unfamiliarity with legal rules does not necessarily suggest that he lacks the *mental capacity* to represent himself.

I agree that a defendant's constitutional right to represent himself is not absolute. *Madsen*, 168 Wn.2d at 504. I also agree that a trial court generally has discretion to deny a defendant's request for self-representation. *Id.* However, a trial court abuses its discretion when it denies a defendant's request to represent himself based on a finding that the defendant lacks the mental capacity to represent himself that has no support in the record.[10] The trial court abused its discretion here.

It is hard to disagree with the trial court's conclusion that Englund would be better served by a lawyer's representation. However, because there is no evidence that Englund did not have

---

[10] I recognize the trial court's unique opportunity to observe and consider a defendant's demeanor and non-verbal conduct in assessing the defendant's request to represent himself. However, here nothing *in the record* suggested that the defendant did not have the mental capacity to conduct his own defense.

the mental capacity to represent himself, the trial court was required to allow him to exercise his constitutional right of self-representation, whether foolish or not. I believe that the trial court erred in interfering with Englund's right to represent himself. Accordingly, I would reverse and remand for a new trial.

Maxa, J.

_____
MAXA, J.