[No. 681-1.   Division One—Panel 2.   January 8, 1973.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES MURRY
NABORS, *Appellant*.

*James R. Short* and *James V. Grubb*, for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *John R. Cuningham, Deputy,* for respondent.

JAMES, J.—James Nabors was found guilty by a jury of two counts charging rape, four counts charging burglary, and one count charging assault. It is undisputed that during a 5-week period, several women were assaulted and raped in their Seattle homes. Within an hour of the last incident,

Nabors was arrested. Each of the victims identified Nabors as her assailant.

Nabors' principal claim of error concerns the denial of his motion for a recess after his counsel learned that he had been given tranquilizing medication during a noon recess. The relevant facts are as follows: After the state had rested, Nabors testified in his own behalf. His direct examination was interrupted by the noon recess. When court reconvened, Nabors' counsel moved for a recess, stating as his reason: "I have been advised that during the recess the defendant has been given dope."

In the colloquy that followed, it was revealed that Nabors had become violent after he was returned to the county jail for the duration of the noon recess. The deputy sheriff who brought Nabors to the courtroom told the trial judge that the jail doctor had been called and had given Nabors tranquilizing medication.

The trial judge determined he would require that the doctor be interrogated before allowing Nabors to resume the stand. He directed Nabors' counsel to proceed with the examination of another witness while awaiting the doctor's appearance in court. Nabors' counsel complied, but stated, "The Court will understand that we proceed with the testimony over my objection."

The witness was a police detective who testified that Nabors consistently maintained that he didn't know why he was arrested. Further, by his interrogation of the witness, Nabors' counsel was successful in excluding an exhibit offered by the state.

The jury was then excused and the jail doctor took the stand. He testified that Nabors had broken a chair and was creating a disturbance in the jail. In his judgment, Nabors "was really violent."

At the doctor's direction, Nabors was orally given tranquilizing drugs. The doctor testified that the combination of drugs which he prescribed had quieted Nabors but that they would affect him for only three-fourths of an hour.

When Nabors' counsel concluded his cross-examination of the doctor, the trial judge announced his intention of proceeding with the trial, and counsel renewed his motion for a recess.

On appeal, Nabors' claimed error is that "[t]he trial court abused its discretion in not granting defendant's request for a recess based on the defendant being under the influence of drugs just prior to his resuming the witness stand."

■ Competency to stand trial is a fundamental requirement of criminal justice. *State v. Tate*, 74 Wn.2d 261, 444 P.2d 150 (1968). An accused is competent to stand trial only "if he is capable of properly understanding the nature of the proceedings against him and if he is capable of rationally assisting his legal counsel in the defense of his cause." *State v. Gwaltney*, 77 Wn.2d 906, 907, 468 P.2d 433 (1970). Competency to stand trial must necessarily be determined on an ad hoc basis. *State v. Murphy*, 56 Wn.2d 761, 355 P.2d 323, 83 A.L.R.2d 1061 (1960).

■ The trial judge promptly held a hearing to determine if Nabors' competency to stand trial had been impaired by the administration of the tranquilizing drugs. The testimony of the jail doctor is uncontroverted. The effect of the drugs was of short duration. Counsel on appeal argues that Nabors' testimony after the noon recess demonstrates that he was affected by the drugs, but we find nothing in the record to indicate that he was.

> The determination of the competency of a witness to testify is peculiarly within the discretion of the trial court.

*State v. Bishop*, 51 Wn.2d 884, 885, 322 P.2d 883 (1958); *State v. Mahaffey*, 3 Wn. App. 988, 478 P.2d 787 (1970). The trial judge properly refused Nabors' request for a further recess.

Nabors also assigns error to the admission into evidence of an automobile radio antenna produced in a routine search when he was booked. An 8-inch section of the antenna,

sharpened at one end, was found concealed in his shorts. It was not otherwise identified, and was admitted over Nabors' objection as to its relevancy.

Both of the victims who testified that they had been forcibly raped by Nabors said that he threatened them with a knife. The victim of the last assault—a threatened rape —testified that Nabors kept his hands behind his back while threatening her. She testified that Nabors ran when she screamed and a neighbor appeared on the scene. It was after this incident that Nabors was arrested.

The time of the last assault, the time of the arrest, the modus operandi of the assailant and the finding of the concealed antenna which could have been used as a weapon, all constituted circumstantial evidence which could properly be considered and weighed by the jury. The trial judge did not err in ruling that the antenna was admissible.

Three of Nabors' assignments of error question instructions given and refused concerning the definition of "reasonable doubt." The instruction given was expressly approved in *State v. Tanzymore*, 54 Wn.2d 290, 340 P.2d 178 (1959).

Nabors' final assignment of error concerns the court's instruction defining circumstantial evidence. The jury was instructed that:

I instruct you that evidence may be of two kinds, direct or circumstantial. Direct evidence relates directly to factual questions and is produced by witnesses testifying directly from their personal observation. Circumstantial evidence relates to facts and circumstances from which the jury may infer other or connected facts which usually and reasonably follow according to the common experience of mankind.

In order to sustain a conviction on circumstantial evidence *alone*, however, the facts and circumstances relied upon *must* be consistent with each other, and consistent with the guilt of the defendant. They *should* be inconsistent with any reasonable hypothesis or theory of innocence which would establish, or tend to establish, the defendant's innocence.

> If upon consideration of the whole case, you are satisfied beyond a reasonable doubt of the guilt of any defendant, it does not matter whether such certainty has been produced by direct evidence or by circumstantial evidence.

(Italics ours.) Instruction No. 24.

Nabors points out that while the instruction tells the jury that circumstantial evidence *must* be consistent with guilt, it does not require that the same evidence *must* be inconsistent with innocence.

The instruction, which was requested by the state, is inartfully worded. An accused may be convicted even though all of the evidence of his guilt is circumstantial. In such a case the jury *must* be instructed that the circumstances *must* be consistent with guilt and *must* be inconsistent with innocence.

> It is a well established rule that, in order to sustain a conviction on circumstantial evidence, the circumstances proved by the state must not only be consistent with each other and consistent with the hypothesis that the accused is guilty, but also must be inconsistent with any hypothesis or theory which would establish, or tend to establish, his innocence.

*State v. Gillingham,* 33 Wn.2d 847, 854, 207 P.2d 737 (1949); *State v. Slaughter,* 70 Wn.2d 935, 425 P.2d 876 (1967); *State v. Moorer,* 5 Wn. App. 252, 486 P.2d 1152 (1971); *State v. Stowers,* 2 Wn. App. 868, 471 P.2d 115 (1970).

In many cases, however, the state's case will consist of both direct and circumstantial evidence. In such cases the distinction between direct and circumstantial evidence should be explained as in the first paragraph of instruction No. 24. The jury should then be advised that if circumstantial evidence is considered by them, it *should* be consistent with guilt and it *should* be inconsistent with innocence. In a case with both direct and circumstantial evidence, the jury should *not* be instructed concerning a conviction based upon circumstantial evidence *alone*. Such a statement can serve only to confuse jurors. However, in a case which

presents both direct and circumstantial evidence, a proper instruction should conclude with a paragraph similar to that in instruction No. 24.

In this case it was inappropriate to instruct that "in order to sustain a conviction on circumstantial evidence *alone* . . ." The case against Nabors was almost entirely based upon direct evidence. But though inappropriate, because there was direct evidence, the instruction did not in any way prejudice Nabors by diminishing the state's burden of proof. *State v. Gunderson*, 74 Wn.2d 226, 444 P.2d 156 (1968); *State v. Hines*, 5 Wn. App. 587, 489 P.2d 746 (1971).

The judgment is affirmed.

FARRIS, A.C.J., and SWANSON, J., concur.

Petition for rehearing denied February 22, 1973.