[No. 1022-3.    Division Three.    December 30, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. KENNETH
AGTUCA, *Appellant*.

GREEN, C.J., and McINTURFF, J., concur by separate opinions.

*Daniel N. Clark* (of *Ringhoffer & Clark*), for appellant
(appointed counsel for appeal).

*Arthur Eggers, Prosecuting Attorney,* for respondent.

MUNSON, J.—Kenneth Agtuca, an inmate at Walla Walla
State Penitentiary, appeals a jury conviction of second-de-
gree assault.

James Payne, a prison guard, was assaulted March 22,
1973. The same day, the defendant was placed in solitary
for his alleged participation therein. On April 17, 1973, an

information was filed charging defendant in the assault; an order to produce, an arrest warrant and a copy of the information were given the sheriff for appropriate service; and the order to produce was served upon the superintendent of the state penitentiary. The arrest warrant and information were not served upon the defendant until May 30, 1973.[1] Defense counsel was appointed June 7, 1973. Defendant pleaded not guilty on June 18, 1973. A trial date of August 16, 1973, was set on July 19, 1973. After a continuance,[2] trial was held on October 9 and 10, 1973.

At trial, Richard Eugene Lucas, a former penitentiary inmate, who had previously been tried for his part in the assault, testified that on March 22, 1973, the defendant stomped on Officer Payne after he had been felled by Lucas with a blow from a hammer. A second inmate, Dennis Dexter, corroborated Lucas' story as to the participation of Agtuca. Officer Payne was unable to identify his assailants. The State, in addition to other circumstantial evidence, also introduced a blood-stained T-shirt worn by Agtuca on the day of the assault. The blood stains were identified as belonging to the same blood group as Payne's. The defendant denied any part in the assault.

The first issue is whether the defendant was denied counsel at a critical stage in the proceedings, *i.e.*, from April 17 until June 7—counsel was unable to interview witnesses at a time shortly after the assault.[3] In *State v.*

---

[1]During oral argument we were advised that on April 17, 1973, defendant was out of the penitentiary in the custody of a western Washington law official pending his testimony in a criminal prosecution. The length of his stay was approximately 1 week. The delay in serving the arrest warrant and information was due either to an oversight by the institution to notify the sheriff of defendant's return, or the failure of the sheriff to make continuous inquiry as to the defendant's return.

[2]This continuance was necessitated by defendant's action in climbing to the top of the state penitentiary water tower and refusing to come down.

[3]The case relied upon by defendant, *Tacoma v. Heater*, 67 Wn.2d 733, 409 P.2d 867 (1966), a *sui generis* case, is factually distinguishable from the case at bar in that a Tacoma police rule prohibited an individual picked up for DWI from contacting anybody, including an

*Jackson,* 66 Wn.2d 24, 400 P.2d 774 (1965), the court was presented with the question whether the right to court-appointed counsel extended to all stages in the criminal and judicial process. The gist of its holding was that the right to counsel extended only to those stages in which a defendant's rights may be lost, defenses waived, privileges claimed or waived, or in which the outcome of the case is otherwise substantially affected. *See Garrison v. Rhay,* 75 Wn.2d 98, 449 P.2d 92 (1968). We find no violation of defendant's right to counsel in the present case. Defendant called a number of inmates as witnesses. There is no claim that access was denied to any potential witness or that additional evidence of innocence could have been obtained.[4]

■ The second issue is whether defendant was denied the right to a speedy trial.[5] Article 1, section 22, amendment 10 of the Washington State Constitution provides that a defendant has a right to a speedy trial. Implementing this provision is RCW 10.46.010. However, this statute does little more than indicate the legislature's intent as to what constitutes a speedy trial, since after dismissal thereunder, the State may immediately file a new information charging the same or a related offense. *State v. McEvers,* 76 Wn.2d 34, 454 P.2d 832 (1965); RCW 10.43.010. In *State v. Davis,* 2 Wn. App. 380, 467 P.2d 875 (1970), relying on *State v. Christensen,* 75 Wn.2d 678, 453 P.2d 644 (1968), we held that the defendant, in order to assert his right under RCW 10.46.010, was required to demand a speedy trial in explicit terms. This is no longer the law. In *Barker v. Wingo,* 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972), it was held that the failure to request a speedy trial was only one factor to be considered, along with the reason for and the

---

attorney, for 4 hours. This rule denied the defendant his right to show he was not intoxicated since the evidence as to the state of intoxication is greatly diminished after 4 hours.

[4]*See State v. Louie,* 68 Wn.2d 304, 413 P.2d 7 (1966), wherein an argument similar to defendant's was made and rejected for lack of discernible prejudice.

[5]Defendant does not claim the criminal rules of procedure are applicable to any portion of the proceedings herein.

length of the delay, and any resulting prejudice. *See State v. Christensen, supra* at 686-88. In the case at hand, there was no demand for a speedy trial save a motion to dismiss made and denied June 18, 1973.

A delay of approximately 4 months, standing alone, is not long enough to constitute a denial of a speedy trial. *Barker v. Wingo, supra; State v. Christensen, supra.* Furthermore, the defendant has not shown the delay prejudiced his defense, *i.e.*, he has not shown that the delay permitted evidence to be lost or witnesses to become unavailable. As observed by the trial court, the period of time from the assault until defense counsel was appointed is no greater than the usual passage of time from the occurrence of an event until witnesses are examined by counsel. The memory of the witnesses is not shown to have deteriorated to such an extent so as to prejudice the defendant's position. Defense counsel had the opportunity to confer with defense counsel for Lucas, to attend the Lucas trial, and to hear the testimony of the witnesses at that trial. Additionally, there was available to the defendant the right, at least after July 1, 1973, to depose any recalcitrant witness and to request statements and information in the possession of the prosecution relative to the assault. CrR 4.6-.7. We find no error in the delay.

The third issue is whether the court erred in failing to give defendant's proposed instruction No. 9.[6] It is proper

[6]"You are instructed that evidence is of two kinds — direct and circumstantial.

"Direct evidence is the testimony of witnesses who have testified to facts, of their own knowledge, which directly connect the defendant with the crime. That is, it is evidence of witnesses who directly saw him commit the crime, or some part of it.

"Circumstantial evidence is proof of certain facts and circumstances from which the jury may infer other connected facts which, according to the common experience of mankind, usually and reasonably follow from the proven facts and circumstances.

"A crime may be shown to have been committed by both direct and circumstantial evidence, or by either direct evidence alone, or by circumstantial evidence alone. But as to circumstantial evidence, the

to refuse to instruct in the requested fashion if the State's case is based on both direct and circumstantial evidence. *State v. Cadena*, 74 Wn.2d 185, 443 P.2d 826 (1968); *State v. Gunderson*, 74 Wn.2d 226, 444 P.2d 156 (1968); *State v. Favro*, 5 Wn. App. 311, 487 P.2d 261 (1971).[7] We find no error.

The final issue is whether the court erred in presenting the defendant in leg irons and handcuffs to the jury for acceptance of its verdict.

The defendant was not manacled during the trial. The jury had considered the evidence and had reached a verdict. When each juror was polled, he acknowledged that the verdict was his, as well as that of the jury. The defendant contends his manacled state prevented the jurors from changing their minds during the polling procedure. The polling of the jury is for the purpose of determining that the verdict signed by the foreman is that of the individual jurors and not one that has been coerced or caused by mistake. It is not an invitation to the jurors to change their minds. *See McFarlane v. Chicago, M. & St. P. Ry.*, 129 Wash. 230, 224 P. 581 (1924). The cases relied upon by the defendant[8] are distinguishable from the instant case in that they address the problem of the manacled or drugged defendant during trial. The complained-of error is too speculative to warrant reversal of a jury verdict regularly arrived at and verified by polling.

Judgment affirmed.

GREEN, C.J., and McINTURFF, J., concur.

GREEN, C.J. (concurring)—While the majority correctly

---

facts and circumstances in evidence must be consistent with each other and with the guilt of the defendant and inconsistent with any reasonable theory of defendant's innocence."

[7]The dicta contained in *State v. Nabors*, 8 Wn. App. 199, 505 P.2d 162 (1973), as modified in *State v. Gosby*, 11 Wn. App. 844, 526 P.2d 70 (1974) does not change this rule.

[8]*State v. Murphy*, 56 Wn.2d 761, 355 P.2d 323, 83 A.L.R.2d 1061 (1960); *State v. Williams*, 18 Wash. 47, 50 P. 580 (1897); *State v. Maryott*, 6 Wn. App. 96, 492 P.2d 239 (1971).

expresses the law of Washington with regard to defendant's proposed hypothesis of innocence instruction, No. 9, for this case, I believe the use of such an instruction is confusing and should be abandoned. *Holland v. United States,* 348 U.S. 121, 99 L. Ed. 150, 75 S. Ct. 127 (1954). Circumstantial evidence is, intrinsically, no different than testimonial evidence. Consequently, a proper instruction as to the standard for reasonable doubt should be sufficient.

McInturff, J. (concurring)—Although I agree in substance with the rationale and result reached by our decision, condoning the defendant being presented in leg irons and manacles before a jury to hear the verdict, without a reason given, offends my concept of due process as it sullies the purpose of article 1, section 22, of our state constitution. That constitutional provision is intended to preserve the freedom of an accused to defend himself untrammeled by manacles when brought into the presence of the court for trial. The courtroom's alter ego is not a cell—it is the fairness exacted by our concept of justice.

Petition for rehearing denied February 6, 1975.

Review denied by Supreme Court September 26, 1975.