[No. 2520-1.    Division One.    April 21, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. CARL L. HARP, *Appellant*.

*Hunter, Gates & Patterson* and *Gerald R. Gates*, for appellant (appointed counsel for appeal).

*Robert E. Schillberg, Prosecuting Attorney*, and *David G. Metcalf, Deputy*, for respondent.

WILLIAMS, C.J.—Carl L. Harp was charged by information with two counts of assault in the first degree, rape, sodomy, and with being a person convicted of a crime of violence in possession of a pistol. The jury found that Harp was guilty of each crime and that he was armed with a deadly weapon during their commission. The court entered judgment which imposed life sentences for the rape and each of the two assaults, and also imposed the statutory maximum sentences of 10 years for the sodomy and being in possession of a pistol. The sentences upon the two assaults, sodomy, and the illegal possession of a pistol were ordered to run concurrently, and the sentence for rape consecutively. Harp appeals from the judgment. We affirm.

The facts which the jury was entitled to believe are these: On June 21, 1973, two co-ed camp counselors were hiking on a trail in the Snohomish County foothills near the town of Gold Bar. While returning to their car, which they had driven from camp and parked on an access road,

they came upon Harp, who was seated next to the trail with his pack open. The girls talked with him for a short time and then proceeded down the trail to the road. There, Harp came up with them and accompanied them to their car. When they arrived at the car, Harp pointed a pistol at both girls, ordered them to "hold it," and told them to go into the woods. When they had walked about 30 yards into the woods, Harp had the girls take off their clothes and sit down. He then directed the first girl, Miss G., to an area 6 to 10 feet away from the second girl, Miss S., and required that she lie down and assume a coital position. Harp then turned to Miss S., tied her to a tree by placing her belt around her neck and, still pointing the pistol at her, ordered her to commit fellatio upon him, which she did. While this was going on, he was turned away from Miss G. When Harp finished the act of sodomy, he faced Miss G., pointed the pistol at her and told her that if anything happened, she was the first to go. He placed the pistol out of reach of either girl and had sexual intercourse with Miss G. During this episode, Harp had his back to Miss S. Following this, he untied Miss S. and let both girls go.

They drove back to camp and reported to the director, who immediately called the sheriff. Three officers from the sheriff's office and Deputy Town Marshal Ericks, of Gold Bar, came out. The girls told the officers what had occurred and described Harp and his possessions.

The next day, Harp was on the highway outside of Gold Bar when he was seen by Deputy Town Marshal Ericks, who recognized him from the description given by the girls. Ericks stopped, identified himself as a law enforcement officer, and placed Harp in the back of his patrol car. He then radioed the sheriff's office for help. Two sheriff's deputies arrived, formally arrested Harp, and searched him and his pack.

In his brief, Harp makes 15 assignments of error, which he discusses in 8 arguments. We will follow the same arrangement.

■■ First, Harp contends that the search and seizure

of his pack and its contents, which included a .36 caliber cap and ball pistol, knives and clothing, were illegal because the Deputy Town Marshal, Ericks, was outside the boundary of the town of Gold Bar and, hence, outside of his jurisdiction when the initial detention was made. It is true that Ericks had no authority as a police officer outside of Gold Bar. However, as a private citizen, he could properly arrest Harp without a warrant because he had reasonable and probable cause to believe that Harp was guilty of a felony. *State v. Jack*, 63 Wn.2d 632, 388 P.2d 566 (1964); *Jack v. Rhay*, 366 F.2d 191 (9th Cir. 1966); 5 Am. Jur. 2d *Arrest* § 36 (1962); E. Fisher, *Laws of Arrest* § 112, at 248 (1967). It should be noted that Ericks simply held Harp until the sheriff's deputies arrived. They, of course, had county-wide jurisdiction, and it was proper for them to continue the arrest procedures which included the search of Harp and seizure of those things which were under his immediate control. *State v. Gluck*, 83 Wn.2d 424, 518 P.2d 703 (1974); *State v. Gibson*, 76 Wn.2d 814, 459 P.2d 22 (1969). The pack and its contents were admissible in evidence.

Second, Harp contends that the court erred in refusing to dismiss the charge of first-degree assault of Miss G., because the essential elements of the charge of rape are the same as those required to prove the charge of first-degree assault with intent to commit rape. The theory is that the assault merged into rape which is, of course, itself an assault of an aggravated kind. 1 R. Anderson, *Wharton's Criminal Law & Procedure* § 77 (1957). Because he was sentenced to life for both the assault and the rape, Harp argues that he was twice put in jeopardy and is being punished twice for the same act.

■■ Double jeopardy exists if the offenses charged are identical, or if a lesser offense can be said to be a constituent element in the perpetration of a greater offense. *State v. Roybal*, 82 Wn.2d 577, 512 P.2d 718 (1973); *State v. Barton*, 5 Wn.2d 234, 105 P.2d 63 (1940); *State v. Waldenburg*, 9 Wn. App. 529, 513 P.2d 577 (1973). Double jeopardy

does not exist where a defendant stands charged with different offenses even though they may arise out of the same transaction. *State v. Johnson,* 60 Wn.2d 21, 371 P.2d 611 (1962); *State v. Boren,* 42 Wn.2d 155, 253 P.2d 939 (1953); *State v. Barton, supra.* The criminal acts against Miss G. constituted two separate and distinct offenses. The assault with intent to commit rape terminated when Harp turned his attention to Miss S. The rape of Miss G. thereafter involved a new assault distinctive from the one initially made. *State v. Smith,* 9 Wn. App. 279, 511 P.2d 1032 (1973).

■ Third, Harp assigns error to the court's refusal to instruct the jury on the crime of second-degree assault. The elements of first-degree assault are that the assault be committed with an intent to commit a felony *and* with a firearm or any deadly weapon likely to produce death. Second-degree assault is committed with intent to commit a felony but without a deadly weapon. RCW 9.11.010 and .020. An instruction on second-degree assault may be given only where there is substantial evidence in the record upon which the jury can properly decide that the defendant committed the lesser included offense. *State v. Johnston,* 84 Wn.2d 572, 527 P.2d 1310 (1974); *State v. Stationak,* 73 Wn.2d 647, 440 P.2d 457 (1968). The attack upon Miss G. was either an assault in the first degree, that is, an assault with a firearm or deadly weapon accompanied by an intent to commit a felony, or no assault at all. Throughout the time that Harp and the girls were together after they left the car, Harp had the pistol in his hand or within his reach. There was no evidence that Harp was ever without his deadly weapon.

■ Next, Harp contends that he was twice placed in jeopardy because he was found guilty of the crime of being a person convicted of a violent crime in possession of a pistol and, in addition, special verdicts were returned that he was armed with a deadly weapon (the same firearm) while committing the assaults, rape, and sodomy. The special verdicts which determined that Harp was armed with a deadly weapon were made pursuant to RCW 9.95.040,

which does not create a separate offense, but simply limits the power of the Board of Prison Terms and Paroles in fixing Harp's minimum sentence of confinement. *State v. Slaughter*, 70 Wn.2d 935, 425 P.2d 876 (1967). RCW 9.41.040 makes it a specific crime for a person who has been convicted of a crime of violence to have a pistol in his possession. Both statutes applied to Harp: He was a person convicted of a violent crime with a pistol in his possession and so was sentenced for that criminal act; he was armed when he committed the criminal acts against the girls and so the sentences for those crimes were enhanced.

■ Fifth, Harp assigns error to three of the trial court's instructions. He does not argue the first one, so it will not be considered. *State v. Schaffer*, 70 Wn.2d 124, 422 P.2d 285 (1966). The court correctly instructed the jury on direct and circumstantial evidence, *State v. Proctor*, 12 Wn. App. 274, 529 P.2d 472 (1974); *State v. Nabors*, 8 Wn. App. 199, 505 P.2d 162 (1973), and correctly instructed the jury on the presumption of innocence. *State v. Tanzymore*, 54 Wn.2d 290, 340 P.2d 178 (1959).

■■ Sixth, Harp claims that he should not have been found guilty of being a person convicted of a violent crime in possession of a pistol (RCW 9.41.040), because his weapon is an antique and thus exempt from the application of the firearms and dangerous weapons act. That act provides that it "shall not apply to antique pistols and revolvers manufactured prior to 1898 and held as collector's items." RCW 9.41.150. Therefore, so the argument goes, the cap and ball pistol, although possibly manufactured since 1898, is a replica of one manufactured prior to that date and, consequently, exempt. RCW 9.41.150 permits responsible hobbyists to collect pistols of historical value; it does not exempt persons from the act whose past violent crime predicts a threat to the community. Harp's use of the weapon had nothing to do with collecting antiques—the purpose of the act. To adopt Harp's interpretation of the firearms and dangerous weapons act would be absurd. *Schwarz v. State*, 85 Wn.2d 171, 531 P.2d 1280 (1975).

Next, Harp complains about the requirement of the judgment that he must serve the life sentence for rape consecutive to, rather than concurrently with, the two life sentences for assault with intent to commit rape. RCW 9.92.080(2) and (3) provide:

(2) Whenever a person is convicted of two or more offenses which arise from a single act or omission, the sentences imposed therefor shall run concurrently, unless the court, in pronouncing sentence, expressly orders the service of said sentences to be consecutive.

(3) In all other cases, whenever a person is convicted of two or more offenses arising from separate and distinct acts or omissions, and not otherwise governed by the provisions of subsections (1) and (2) of this section, the sentences imposed therefor shall run consecutively, unless the court, in pronouncing the second or other subsequent sentences, expressly orders concurrent service thereof.

Our review of the sentencing part of the judgment is limited to determining whether the court abused its discretion. We believe that, under the circumstances, the court acted well within its discretion in ordering the life sentence for rape to be served following the life sentences for the assaults.

Finally, Harp contends that the sentences are cruel and unusual and, therefore, proscribed by the eighth amendment to the United States Constitution, which states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The responsibility for fixing the duration of the sentence, its execution, pardon, probation, and parole is largely vested in the executive branch within limits established by the legislature. Until the executive, acting through the Board of Prison Terms and Paroles, has fixed the minimum term which Harp is to serve, the question of cruel punishment may not be properly considered. *State v. Fairbanks*, 25 Wn.2d 686, 171 P.2d 845 (1946); *State v. Hurst*, 5 Wn. App. 146, 486 P.2d 1136 (1971).

Harp has filed two supplemental briefs, which we have carefully considered.

The judgment is affirmed.

CALLOW and ANDERSEN, JJ., concur.

Petition for rehearing denied June 30, 1975.

Review denied by Supreme Court September 5, 1975.