**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

FILED
10/16/2023
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DENVER MCKAY BRAGG,<br><br>    Appellant,<br><br>        v.<br><br>STATE OF WASHINGTON,<br><br>    Respondent. | No. 85049-1-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

DÍAZ, J. — A jury convicted Denver Bragg of three counts of assault in the first-degree, drive-by shooting, attempting to elude law enforcement, and possession of a stolen firearm, some with firearm and law enforcement enhancements, for firing a gun at Lewis County Sherriff's Office deputies during a high-speed car chase. Bragg now argues, in part, (1) that the trial court violated his right to confer with his attorney by requiring him to participate in all nontrial hearings via Webex[1] while his counsel appeared in the courtroom, and (2) that the trial court erred by not dismissing this matter or, at a minimum, excluding DNA[2] evidence, which the State belatedly obtained and disclosed. While the court did not err in denying the DNA-related motion, we hold that the State did not carry its burden to show beyond a reasonable doubt that Bragg's inability to confer with his

---

[1] Webex is an Internet-based application that provides live video conferencing and calling services.

[2] Deoxyribonucleic acid.

counsel at several critical stage proceedings was harmless. Thus, we reverse and remand the matter for further proceedings.

## I. BACKGROUND

In early 2021, Bragg resided with his girlfriend in her sister's home for a couple months. The sister owned a "Tiffany Blue" "Ruger .380" handgun. Bragg and his girlfriend moved out in late April, and the sister realized her gun had "disappeared" from her bedroom nightstand along with a "full" box of ammunition from her closet. She reported it stolen on April 25, and the police suspected Bragg.

On May 3, 2021, two Lewis County Sheriff's Office deputies investigating the stolen handgun saw Bragg driving by, and each began to follow him in their marked patrol cars. The deputies activated their patrol lights, and a high-speed chase through Lewis County ensued. The deputies also activated their sirens when Bragg did not stop. A third deputy joined the pursuit in his marked patrol car.

The deputies attempted to stop Bragg multiple times by employing "spike strips" and using various maneuvers. At one point in the chase, the officers saw Bragg fire four rounds at them. They also heard the shots. No one was hurt. The police eventually apprehended Bragg, but did not find any weapons during his arrest. In the hospital that night, Bragg told medical staff that he was on methamphetamine and heroin during the chase.[3]

The next day, a City of Toledo Public Works Department employee found a pistol along the route where the pursuit occurred. The ".380 . . . Ruger" pistol was

---

[3] Bragg also told the court at sentencing that he was "high on drugs and not in my right mind" during the car chase.

2

No. 85049-1-I/3

"a blueish-teal color" that someone had attempted to paint black. A forensic scientist with the Washington State Patrol Crime Laboratory later matched Bragg's DNA to that found on the gun and the gun's magazine.

The State charged Bragg with three counts of assault in the first degree with firearm enhancements and enhancements for committing the crimes against law enforcement officers, drive-by shooting with a law enforcement enhancement, attempting to elude a pursuing police vehicle with a firearm enhancement, unlawful possession of a firearm in the second degree, and possession of a stolen firearm. The trial court set Bragg's bail at $750,000, which he was unable to pay.

Before trial, the court granted multiple continuances requested by Bragg and the State. For all pretrial proceedings, Bragg appeared on video via Webex from jail, while his counsel and the State appeared in person before the trial judge. Multiple times, Bragg expressed frustration with the pretrial proceedings and distrust of his counsel. At a hearing on December 29, 2021, defense counsel tried to withdraw due to allegedly irreconcilable conflicts over whether to delay the trial to secure an expert DNA witness. The court denied counsel's motion to withdraw.

The four-day jury trial began January 3, 2021. Bragg appeared in person for trial. After the State rested, Bragg did not call any witnesses. He moved to dismiss the second degree unlawful possession of a firearm charge. The State conceded, and the court dismissed that count. The jury then found Bragg guilty on all remaining counts, including the enhancements. The court sentenced Bragg on January 12, 2022 to a high-end standard-range term of 648 months. Bragg appeared at sentencing via Webex.

3

No. 85049-1-I/4

## II. DISCUSSION

### A. Right To Confer with Counsel

Bragg argues the trial court violated his constitutional right to confer with his counsel by requiring him to participate in all nontrial hearings via Webex while his attorney appeared in court.

#### 1. Additional Factual Background

As the State acknowledges, Bragg appeared via Webex video from jail while his attorney appeared in court for approximately 20 nontrial hearings. Bragg argues that at least 8 of those hearings were critical stage proceedings, and that the court violated his Sixth Amendment rights because he was unable to privately consult with his attorney during those hearings. U.S. CONST. amend VI. The State agrees that the following 8 hearings constituted critical stage proceedings, though it asserts that the "results of the various proceedings would not have been different, nor would the results of the trial":

    (1)  May 4, 2021 preliminary appearance and bail hearing,

    (2)  May 6, 2021, arraignment and trial setting,

    (3)  August 26, 2021 review hearing,

    (4)  October 14, 2021 review hearing,

    (5)  November 1, 2021 review hearing,

    (6)  December 29, 2021 review hearing,

    (7)  December 30, 2021 final pretrial conference, and

4

No. 85049-1-I/5

(8)  January 12, 2022 sentencing.[4]

2. Law

Under both the Sixth Amendment and article I, section 22 of the Washington Constitution, a criminal defendant is entitled to the assistance of counsel at "critical stages" in the litigation.  State v. Heddrick, 166 Wn.2d 898, 909-10, 215 P.3d 201 (2009).  A "critical stage" is one "'in which a defendant's rights may be lost, defenses waived, privileges claimed or waived, or in which the outcome of the case is otherwise substantially affected.'"  Id. at 910 (quoting State v. Agtuca, 12 Wn. App. 402, 404, 529 P.2d 1159 (1974)).

The constitutional right to the assistance of counsel "carries with it a reasonable time for consultation and preparation," which includes the "opportunity for a private and continual discussions between [the] defendant and his attorney during the trial."  State v. Hartzog, 96 Wn.2d 383, 402, 635 P.2d 694 (1981).  "The ability for attorneys and clients to consult privately need not be seamless, but it must be meaningful."  State v. Anderson, 19 Wn. App. 2d 556, 562, 497 P.3d 880 (2021), review denied, 199 Wn.2d 1004, 504 P.3d 832 (2022).

---

[4] Bragg initially contended that his right to privately confer with counsel was implicated in *every* hearing where he appeared via Webex.  He cites Sanchez to support his claim that *all* pretrial proceedings are critical.  See In re Pers. Restraint of Sanchez, 197 Wn. App. 686, 698, 391 P.3d 517 (2017) ("the period from arraignment to trial is 'perhaps the most critical period of the proceedings'") (quoting Powell v. Alabama, 287 U.S. 45, 57, 53 S. Ct. 55, 77 L. Ed. 158 (1932)).  However, after being challenged by the State to identify which of the approximately 20 hearings were the basis of his assignments of error, Bragg acknowledged that the "right to counsel and, therefore, the right to confer, attach at all critical stages."  Bragg appears to accept the State's concession that at least the 8 hearings identified above are critical stage proceedings, so we will accept the parties' agreement that these 8 hearings were critical stage proceedings, and further focus our review on four of these hearings below.

No. 85049-1-I/6

We review the right to counsel in two parts: (1) whether the constitutional error is manifest and (2) whether the violation prejudiced the defendant. See Id. at 563-64. The applicable test for prejudice is the constitutional harmless error analysis. Id. at 564. Courts presume prejudice, and the State bears the burden of proving harmlessness beyond a reasonable doubt. Id. (citing State v. Irby, 170 Wn.2d 874, 885-86, 246 P.3d 796 (2011)).

Like the right to counsel in general, whether the court violated the defendant's constitutional right to privately confer with his attorney is a very fact-specific inquiry. See, e.g., Id. at 562-63; State v. Gonzales-Morales, 138 Wn.2d 374, 386, 979 P.2d 826 (1999). Denial of such a right may be a manifest constitutional error, reviewable for the first time on appeal under RAP 2.5(a)(3). Anderson, 19 Wn. App. 2d at 561-62 ("deprivation of the right to counsel is a fundamental constitutional claim that can be raised for the first time on appeal, so long as the claim is manifest, as required by RAP 2.5(a)(3)").[5]

We also point out that in February 2020, our governor declared a state of emergency due to the COVID-19[6] pandemic. Our Supreme Court authorized

---

[5] A manifest error affecting a constitutional right means "(1) the error is manifest, and (2) the error is truly of constitutional dimension." State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). A "manifest" error is identifiable on the record before the court. See Id. at 99. Here, the State conceded at oral argument and in its briefing that the record shows Bragg was separated from his counsel for every nontrial hearing and, particularly, in critical stage hearings, making any error manifest, and it conceded that such error was of a constitutional magnitude. Thus, we address Bragg's argument, and we need not consider any further whether he can raise it for the first time on appeal, which comprised much of the State's primary argument in its brief. But we do not hold that every such deprivation satisfies RAP 2.5(a)(3). Manifest error must first be found. Anderson, 19 Wn. App. 2d at 561-62.

[6] Coronavirus disease 2019.

6

criminal defendants to appear via video, stating, "Courts should continue to hear **in custody** criminal and juvenile offender matters by telephone, video or other means that do not require in person attendance when appropriate."  Fifth Revised & Extended Ord. Regarding Ct. Operations, No. 25700-B-658, at 7, In re Statewide Response by Washington Courts to the COVID-19 Public Health Emergency, (Wash.                      Feb.                      19,                      2021) https://www.courts.wa.gov/content/publicUpload/Supreme%20Court%20Orders/2 5700-B-658.pdf [https://perma.cc/F2PD-LEXX].  The Supreme Court's order was in effect at the time of Bragg's pretrial proceedings.[7]

However, the Supreme Court further made clear that "[f]or all hearings that involve a critical stage of the proceedings, courts *shall provide a means* for defendants and respondents to have the opportunity for private and continual discussion with their attorney."  Id. at 11 (emphasis added).  For this reason, Division Three noted in Anderson that even in the time of COVID-19, "it is the role of the judge to make sure that attorneys and clients have the opportunity to engage in private consultation."  19 Wn. App. 2d at 562.

3.  Discussion

By way of summary, the trial court violated Bragg's right to counsel by not

---

[7] Nowhere in the record does the court or any party identify the pandemic as the reason Bragg participated remotely.  And neither party attributes any additional significance to the pandemic in their briefing.  Thus, we note these restrictions and our Supreme Court's response for context but do not attribute any legal significance to them.  Cf. State v. Jasper, 174 Wn.2d 96, 123-24, 271 P.3d 876 (2012) (we should "'not, for the purpose of finding reversible error, presume the existence of facts as to which the record is silent'") (internal quotation marks omitted) (quoting Barker v. Weeks, 182 Wash. 384, 391, 47 P.2d 1 (1935)).

providing guidance to Bragg and his counsel about how to confer privately during at least four nontrial critical stage proceedings and by placing an unreasonable expectation on Bragg to assert his rights.  And the State fails to meet its burden to prove beyond a reasonable doubt that such errors were harmless.  Thus, without making any comment on the weight of the evidence or the conduct of the trial, we are compelled to reverse and remand this matter for further proceedings.

> a.  Trial Court Did Not Establish Ground Rules

Bragg argues that the trial court erred because it failed to affirmatively establish ground rules on the record for how he and his attorney could privately confer.  In support, Bragg contrasts Anderson and In re Personal Restraint of Reed, No. 53037-6-II (Wash. Ct. App. Sept. 27, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2053037-6-II%20Unpublished%20Opinion.pdf.[8]

In Anderson, the defendant and his attorney were not together in the same room, and the judge set no ground rules for how they could "confidentially communicate."  19 Wn. App. 2d at 563.  Division Three determined the defendant established constitutional error, but the State met its burden of showing the error was harmless.  Id. at 565.  And in Reed, even though the trial court explained to the parties that a witness with a hearing device could hear the whispered

---

[8] "Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions."  GR 14.1(c). "However, unpublished opinions of the Court of Appeals filed on or after March 1, 2013, may be cited as nonbinding authorities, if identified as such by the citing party, and may be accorded such persuasive value as the court deems appropriate."  GR 14.1(a).

conversations of Reed and his counsel, Division Two found no error because the judge explained to Reed that he could write notes or request a break for private conversations with his attorney. No. 53037-6-II, slip op. at 2-3, 10.

Bragg contends that the trial court in Anderson committed error simply by not setting ground rules for private attorney-client conversation, while the court in Reed did not commit error simply because it did set such ground rules, but because it also put the rules "on the record." Bragg seems to suggest that a trial court commits error per se if it does not establish, on the record, ground rules for private conference. The State responds that "there is no requirement that a court put on the record what the ground rules are regarding communication with an attorney."

We agree with the State that Bragg's argument is overly binary. We do not interpret Anderson as establishing a bright-line rule that a trial court affirmatively must establish a process on the record for confidential attorney-client communication, or it commits a constitutional violation. Instead of adopting such a rule in assessing any violation of a defendant's Sixth Amendment rights, we hold that reviewing courts should consider the totality of the circumstances, *including* whether the trial court explicitly established a process for such communications, given the variety of different circumstances that may occur.

Further, as in Anderson, we refer the parties and future trial courts to CrR 3.4(e)(1) and (3), which allow the court to conduct critical stage proceedings such as preliminary appearances, arraignments, bail hearings, and trial settings by video conference as long as the conferencing "facilities . . . provide for confidential communications between attorney and client." See Anderson, 19 Wn. App. 2d at

9

No. 85049-1-I/10

565 (while video conferencing can by "an essential component of continued court operations," courts "must ensure [it] occurs in a way that allows for private attorney-client communication"). CrR 3.4(e)(3) rightly directs courts to assess whether meaningful confidential communication are available and then to engage in a fact-specific analysis as to whether the defendant could practically avail themselves of those resources.

One way the trial court can establish that a defendant knows how to avail themselves of the means to privately confer with their attorney is to provide explicit guidance on the record. See id. Here, it is undisputed that nowhere in the record does the court explain in any way how Bragg and his attorney could communicate confidentially during video conferencing, nor does the court inform Bragg of his constitutional right to do so. The State conceded this point at oral argument. State of Washington v. Denver McKay Bragg, No. 85049-1-I (June 14, 2023), at 10 min., 52 sec. to 10 min., 59 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2023061195/?eventID=2023061195.

The closest the trial court came to addressing Bragg's constitutional right to confer privately with his attorney was during the last pretrial conference on December 30, 2022, the day before trial began. It offered to step out of the courtroom to let Bragg and his counsel continue speaking about a disagreement they had about whether to ask for a continuance so that defense could retain a DNA expert:

> [DEFENSE COUNSEL]: Can I address my client on the record on this?

10

> THE COURT: Absolutely. Do you want me to step out?
> [DEFENSE COUNSEL]: No. Actually, I want to do it on the record.

Even the State does not claim this exchange established a process for confidential communication. Its purpose on its face was not to provide a process for Bragg and his counsel to engage in private communication in general. Indeed, it was the opposite. Bragg's counsel wanted to put his advice on the record. Furthermore, it was the last critical stage hearing on the eve of Bragg's trial, and the record is otherwise silent on this topic for the 18 or so hearings before it. We cannot conclude that this exchange provided any guidance to Bragg or his attorney about how to confer privately.

Nothing else in the record before us shows that the parties and the court discussed, whether on the record or off, a process of any kind for confidential communication. And there is nothing showing that the Webex video conferencing facilities even allowed for such communication, readily or otherwise. Further, contrary to the admonitions in Anderson, at no time did the trial court "make a record of what has been done to ensure confidential communication." Id. In turn, this court has no clear understanding of "the court's measures" in this regard, if any, such that "meaningful appellate review" can occur. Id.

Under the facts of this case, it was error for the court not to set any ground rules for Bragg to exercise his right to privately confer with his counsel.

b. Unreasonable Burden on Bragg To Assert His Rights

Additionally, a trial court may commit error when it places an unreasonable expectation on a defendant to interrupt a proceeding to assert their right to confer

11

with their counsel. Bragg relies on Reed to support his argument that the trial court committed such error during his nontrial hearings.

In Reed, the defendant had to interrupt proceedings to have a private conversation with his attorney because a witness had a hearing device that could pick up whispered conversations. Reed, No. 53037-6-II, slip op. at 2-3. On appeal, Reed equated his situation to that of the defendant in Ulestad, who had to be in a separate room from his attorney while a child witness testified. Id. at 9 (citing State v. Ulestad, 127 Wn. App. 209, 111 P.3d 276 (2005)). In Ulestad, the defendant had to stop proceedings in front of the jury to confer with his counsel in another room. 127 Wn. App at 213. Division Two determined the court violated the "constant communication" requirement of RCW 9A.44.150(h). Id. at 215. However, in Reed, Division Two found that unlike Ulestad, the trial court did not hinder Reed's right to confer with his attorney. No. 53037-6-II, slip op. at 10. There, Reed and his counsel were seated at the same table. Id. Moreover, Reed could signal to his counsel to pause the proceedings if needed, so the burden was not directly on Reed to interrupt the judge. Id.

In the present case, Bragg did not have any of the options available to Reed throughout pretrial proceedings because he was appearing via video from jail while his counsel was in the courtroom. Therefore, Bragg bore the burden of having to interrupt proceedings to confer privately with his counsel. That alone would not necessarily have presented an untenable situation. But again, this is a fact-specific analysis.

Here, Bragg attempted to interrupt the court at one of the critical stage

12

review hearings on November 1, 2021. Bragg and the court entered into a long and contentious exchange regarding the collection of his DNA sample, his speedy trial rights, and firing his attorney. The trial court eventually told Bragg to "[s]top talking," and when he did not, the court muted him. Bragg then walked away from the camera.

And at the next hearing on December 2, 2021—also a stipulated critical stage proceeding on trial confirmation and the test results of Bragg's DNA sample—the following exchange took place, after a long back and forth (where Bragg continually interrupted the court):

> THE COURT: . . . Right now it's just I have a lot of questions [about the State's request for a continuance].
> So I'm going to —
> THE DEFENDANT: Your Honor —
> THE COURT: No. I'm not —
> THE DEFENDANT: Can I —
> THE COURT: No. No. Nope, you're not going to talk right now. You've got an attorney for that.
> [Defense counsel] —
> THE DEFENDANT: He's not my attorney right now so can I —
> THE COURT: No. You're not going to do that. I'm going to cut you off and mute you if you don't stop.
> THE DEFENDANT: Okay.
> THE COURT: You're not talking to your attorney right now.
> THE DEFENDANT: I know. That's what I'm asking you, *how can I do that then*?
> THE COURT: You can be quiet, for one.

(Emphasis added.)

As shown above, Bragg could be particularly assertive throughout the proceedings. But given the dynamics between him and the trial court over multiple hearings, it was unreasonable or at least "unrealistic" to place the burden on Bragg to continue to assert his right to confer with his counsel. Anderson, 19 Wn. App.

13

2d at 563.  In other words, although Bragg continually and impolitely interrupted the court during these exchanges, we cannot conclude from this record that the court established a state of affairs where Bragg realistically was able to assert his right to confer with his counsel.  In short, on this specific record, it was error for the court implicitly to place this burden on Bragg.

### c.  State Did Not Demonstrate Harmless Error

We now turn to whether the trial court's errors were harmless.  Bragg argues that the court committed "structural error, necessitating automatic reversal."  Bragg cites to Ulestad, where Division Two held that "except for a limited right to control attorney-client communication when the defendant is testifying, *any* interference with the defendant's right to continuously consult with his counsel *during trial* is reversible error without a showing of prejudice."  127 Wn. App. at 214-15 (citing Perry v. Leeke, 488 U.S. 272, 279-80, 109 S. Ct. 594, 102 L. Ed. 2d 624 (1989)) (emphasis added).  Ulestad is distinguishable because it involved interference with a right to confer *during trial*, which is not at issue here.  Id.  Further, Division Two analyzed the defendant's right to confer with his attorney under the child testimony statute, RCW 9A.44.150(h), also not at issue here.  Id. at 213-14.

Thus, we now must examine the contested critical stage proceedings to determine whether the trial court's error was constitutionally harmless.  See Anderson, 19 Wn. App. 2d at 564.  Again, we presume prejudice, and the State bears the burden of proving harmlessness beyond a reasonable doubt.  Id.  If a court commits constitutional error, but the error would not have changed the outcome of the proceeding, such error is harmless.  See id. (State met burden of

14

proving harmless error where "[a]ttorney-client consultation would not have made a difference" at resentencing).

We focus our analysis on the following four pretrial hearings, which the parties agree represent critical stage proceedings, and during which Bragg appeared via WebEx while his counsel was in the courtroom:

(1) October 14, 2021 review hearing discussing plea offer,
(2) November 1, 2021 review hearing discussing collecting Bragg's DNA sample and Bragg's request to discharge his counsel,
(3) December 29, 2021 review hearing discussing DNA evidence, and
(4) December 30, 2021 final pretrial conference discussing defense retaining a DNA expert.

### i. Plea Offer Review Hearing

At the hearing on October 14, 2021, Bragg's counsel advised the court that Bragg refused the State's plea offer of 271 months. He further advised the court that he explained the offer to Bragg in a letter and that the State "was not willing to budge" on its offer. Counsel warned Bragg that if he refused the plea offer and a jury found him guilty, "he's looking at [a sentence] over 700 months" based on his offender score and "the consecutive nature of serious violent offenses and firearm enhancements."[9] Defense counsel also discussed his "tense relationship" with Bragg but without significant detail. The court asked Bragg if he wished to address the court, and Bragg declined.

This court cannot conclude that there is no reasonable doubt that nothing would have changed had Bragg and his counsel been able to have a confidential conversation at the moment about the severity of possible jail time if Bragg rejected

---

[9] Indeed, Bragg received a 648-month sentence.

the plea offer. Although Bragg and his attorney had spoken with each other prior to the October 14 review hearing, the record shows defense counsel explained the plea offer in a letter. The ability to confer with counsel in-person, in close proximity, and with the benefit of the court's presence may have induced Bragg to further confer with his counsel regarding the plea offer. Acceptance of a plea offer would not have changed whether Bragg was incarcerated, but the ability to confer at that moment may have led to a significant reduction in the length of his sentence.

### ii. DNA Review Hearings

The second critical hearing occurred on November 1, 2021. During the hearing, the parties discussed Bragg's refusal to give a DNA sample. Bragg refused to submit to the swab test, arguing his DNA was already on file. Bragg also expressed distrust of his counsel, the prosecutor, the corrections officers taking his sample, and the entire proceeding generally. As part of this distrust, Bragg complained to the court that he had been trying to fire his counsel for a while, but it would not let him. Bragg further argued that per the court order to collect his DNA, the "time frame" for collection had "expired." Bragg insisted that his attorney should have made this argument for him. Bragg argued with the court until it muted him.

This was the first of three conversations related to an important piece of evidence—the DNA found on the gun and magazine used to shoot at the officers. Following the November 1 hearing, we cannot say that there is *no reasonable doubt* that if Bragg could have privately conferred with his counsel, (a) the

No. 85049-1-I/17

relationship with his attorney may have improved or at least been functional, or (b) he could have better understood the gravity of the DNA evidence.

Next, at the hearing on December 29, 2021, Bragg's attorney moved to withdraw as counsel. Defense counsel told the court that he received the DNA test results the day before, just one week before trial, and that he wanted an independent expert to review the results. Bragg insisted he did not need an expert and wanted to proceed to trial.[10] Following a long colloquy with Bragg and his attorney about their relationship, the court told counsel that he could have "a conversation" with Bragg about the DNA evidence, but it in no way suggested that the conversation could happen privately at that moment. Indeed, when the court denied counsel's request to withdraw, it told Bragg that his attorney "will come down [to the jail] and talk to you . . . about whether you want to go [to] trial next week or if you want to try to do something with getting the [DNA expert] and request a continuance."

Similar to the prior hearing, we cannot say it is beyond a reasonable doubt that if Bragg and his counsel had been able to privately confer at the December 29 hearing, his counsel (a) could not have explained the gravity of the DNA test results and (b) either encouraged him to retain expert testimony or to reopen plea negotiations. Whether or not any rebuttal DNA expert testimony would have changed the outcome of the trial is unknown. But if Bragg had been able to accept that he was going to trial with the same attorney after the court denied counsel's request to withdraw, a private conversation in that moment may have helped him

---

[10] Bragg also asked the court to reduce his bail, which it denied.

17

accept counsel's advice that a DNA expert was necessary. And there is a reasonable possibility that the DNA expert could have explained to Bragg in a persuasive way how damaging the evidence was. Indeed, the trial court's comments seemed to suggest that it was important for someone to convey to Bragg that the DNA evidence was "not good for him." But the court did not provide a means for Bragg and his attorney to have a face-to-face, private conversation at this critical stage, allowing Bragg to navigate this evidentiary quagmire alone.

The last hearing at issue was the final pretrial conference on December 30, 2021. During this hearing, Bragg's counsel expressed concerns about Bragg's competency to participate in his defense because he "unequivocally said he wants his trial to go next week. Period. He does not want me to retain experts. . . . [H]e thinks that this [DNA] report helps him and it does not." Counsel explained that Bragg seemed unaware of the gravity of the evidence matching his DNA to that found on the gun and its magazine. Bragg told the court that he interpreted the results of the DNA test as "saying the complete opposite of what [my attorney is] telling me." Bragg insisted on proceeding with trial.

Again, it is a reasonable possibility that at this hearing, Bragg would have benefitted from a private conversation with counsel, who could have encouraged him to agree to a continuance to retain an expert because of the gravity of the DNA results or to reconsider the State's plea offer. However, none of this occurred because Bragg did not have a reasonable way to privately confer with his attorney in that moment. The State has not carried its burden to show the trial court's errors were harmless.

18

No. 85049-1-I/19

In response, the State argues that because Bragg showed no hesitation to interrupt the court during multiple hearings, he could freely exercise his Sixth Amendment rights, so there was no prejudice. First, the State ignores the fact that nothing in the record shows the court explained this right to Bragg. Second, at the November 1, 2021 review hearing, the court muted Bragg for interrupting. And then, a month later at the December 2 trial confirmation hearing, the court again told Bragg to be quiet when he asked how he could confer with his counsel. It told Bragg, "You're not talking to your attorney right now" and warned him, "I'm going to cut you off and mute you if you don't stop" interrupting. In this context and on these specific facts, the State's explanation is unavailing.

This court will not speculate as to the nature of the relationship between Bragg and his counsel, though it was clearly strained. But Bragg had a right to avail himself of his counsel's confidential assistance at key moments prior to trial, and the trial court's errors hindered that right and pervaded the proceedings to the point where we cannot know beyond on a reasonable doubt whether the outcome would have differed. We reverse Bragg's convictions and remand this matter to the trial court for a new trial where Bragg has the meaningful assistance of counsel throughout each critical stage proceeding should the State choose to prosecute him again.

B.  DNA evidence

Bragg asserts the delay in collecting his DNA sample, which then produced test results just one week before trial, was prosecutorial misconduct because it forced him to choose between his right to a speedy trial and his right to prepared

19

counsel.  He argues the court should have excluded the DNA evidence under CrR 8.3(b), "necessitating reversal of Bragg's convictions."  Bragg suggests that dismissal may have been appropriate as well.  We disagree.

### 1.  Additional Factual Background

The court authorized the State to collect Bragg's DNA on August 5, 2021, approximately six months before trial.  For various reasons,[11] the State did not collect the DNA swab until November 1.  During a pretrial hearing on December 9, 2021, the State asked to continue the trial date because the State had not yet received the DNA test results.  Bragg's attorney argued that the late notice of the results prejudiced Bragg because "my client is put in a situation where he is forced into a choice; the choice will be:  Go to trial, without having our own possible expert — if the DNA comes back negative.  Or, giving up his right to a speedy trial."  Specifically, Bragg argued that due to the State's delay, defense did not have time to prepare experts to respond to the DNA results or the State's experts unless Bragg agreed to continue the trial.  The court granted a continuance.

Bragg received the DNA test results on December 28, 2021.  At the final pretrial conference on December 30, he moved to exclude the DNA evidence under CrR 4.7 due to his inability to prepare a responsive expert witness.  Ultimately, the court admitted the DNA evidence, stating that anything other than a trial continuance would be an "extreme remedy."

Bragg argues the reasons for delay given by the State were unreasonable.

---

[11] On Friday, October 29, 2021, Bragg refused to submit a buccal swab. But officers collected his DNA sample on Monday, November 1, so his refusal added only three days to the delay.

No. 85049-1-I/21

Specifically, the State, could not explain to the court why there was a three-month delay in collecting the sample. The State notes that the test results were delayed because once it collected Bragg's DNA, the sole forensic scientist analyzing the sample moved from Vancouver to Spokane, and there were delays in shipping the sample across the state. The analyst then caught COVID-19, causing more delay.

2. <u>Law</u>

CrR 8.3(b) provides:

> The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial. The court shall set forth its reasons in a written order.

We apply the same principles to interpreting court rules that we apply to interpreting statutes. <u>State v. Asaeli</u>, 17 Wn. App. 2d 697, 699, 491 P.3d 245, <u>review denied</u>, 198 Wn. 2d 1026, 498 P.3d 955 (2021). We look at the plain language of the rule to ascertain and give effect to the Supreme Court's intent. <u>Id.</u> We review a trial court's ruling on a CrR 8.3(b) motion for an abuse of discretion. <u>State v. Salgado-Mendoza</u>, 189 Wn.2d 420, 427, 403 P.3d 45 (2017). A court abuses its discretion when an "'order is manifestly unreasonable or based on untenable grounds.'" <u>Id.</u> (internal quotation marks omitted) (quoting <u>In re Pers. Restraint of Rhome</u>, 172 Wn.2d 654, 668, 260 P.3d 874 (2011)).

Before a court can dismiss charges under CrR 8.3(b), the party seeking relief bears the burden of showing misconduct and actual prejudice. <u>Id.</u> First, a defendant must show "arbitrary action or governmental misconduct." <u>State v. Michielli</u>, 132 Wn.2d 229, 239, 937 P.2d 587 (1997). Governmental misconduct,

21

however, "'need not be of an evil or dishonest nature; *simple mismanagement is sufficient.*'"  Id. at 239-40 (quoting State v. Blackwell, 120 Wn.2d 822, 831, 845 P.2d 1017 (1993)).  Second, the defendant must show prejudice affecting their right to a fair trial.  CrR 8.3(b).  "Such prejudice includes the right to a speedy trial and the 'right to be represented by counsel who has had sufficient opportunity to adequately prepare a material part of his defense.'"  Michielli, 132 Wn.2d at 240 (quoting State v. Price, 94 Wn.2d 810, 814, 620 P.2d 994 (1980)).  Prejudice is not just expense, inconvenience, or additional delay; the defendant must show any misconduct interfered with their ability to present their case.  City of Kent v. Sandhu, 159 Wn. App. 836, 841, 247 P.3d 454 (2011).

To raise this issue for the first time on appeal, Bragg "must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected [his] rights."  State v. McFarland, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995).  "[I]t is this showing of actual prejudice that makes the error 'manifest[,]' allowing appellate review."  Id.; see RAP 2.5(a) (circumstances affecting scope of appellate review).[12]

---

[12] The State initially argues that it "is not clear what error Bragg is asserting that could be considered under" RAP 2.5(a)'s exception that an appellate court generally will not consider an issue raised for the first time on appeal.  But as it later acknowledges, Bragg moved to exclude the DNA evidence under CrR 4.7, which effectively sought the same relief, and the court denied the motion on the same grounds on which a CrR 8.3(b) motion would have failed.  Compare CrR 4.7(a)(1)(iv) (State's obligation to disclose certain discovery "no later than the omnibus hearing," including experts, their reports, and the "results of . . . scientific tests"), and CrR 8.3(b) (dismissal warranted when governmental misconduct materially affects accused's right to a fair trial), with RAP 2.5(a)(3) (appellate court may accept review of error not raised below when it is a manifest error affecting a constitutional right).  Thus, we exercise our discretion and address Bragg's argument.

No. 85049-1-I/23

3. Discussion

First, we conclude the State committed misconduct by its "'simple mismanagement'" of the time it took to collect and test Bragg's DNA, which resulted in delayed results. See, Michielli, 132 Wn.2d at 239-40 (quoting Blackwell, 120 Wn.2d at 831). In Michielli, the State delayed bringing four additional charges against the defendant until three business days before trial with no justification. Id. at 243-44. Our Supreme Court concluded the State committed misconduct by forcing the defendant to either "go to trial unprepared" or cede their right to speedy trial and request a continuance. Id. at 245. Likewise, here, the State offered no justification for its delay in collecting Bragg's DNA sample, which led to releasing the test results within one week of trial, thus offering him the same choice as the defendant in Michielli.

We further conclude, however, that the trial court did not abuse its discretion in finding that the delay in collecting the DNA evidence did not prejudice Bragg. First, Bragg had long known that a DNA test was authorized and would be an issue at trial. Therefore, his counsel had ample time to obtain experts who would be able to review the report and testify about its meaning at the trial. However, Bragg did not do so. Lack of surprise regarding late disclosure of evidence can be sufficient to show lack of prejudice. State v. Cannon, 130 Wn.2d 313, 328-29, 922 P.2d 1293 (1996). Similarly, this court has held that a defendant's lack of action to obtain experts when the defendant knew they might need one may show a lack of prejudice. See State v. Barry, 184 Wn. App. 790, 798, 339 P.3d 200 (2014)

23

No. 85049-1-I/24

Finally, even if the trial court had excluded the DNA evidence, it was but one piece of otherwise significant evidence supporting the charges against Bragg. Several eyewitnesses, including the three deputies involved in the car chase, saw Bragg flee and shoot at the officers. And the owner of the "Tiffany Blue" handgun identified the gun found at the scene as hers, the same gun officers suspected Bragg had stolen just days before the car chase. Bragg cannot show prejudice.[13]

### III. CONCLUSION

We reverse Bragg's convictions and remand for further proceedings consistent with this opinion.[14]

Díaz, J.

WE CONCUR:

Smith, C.J.                                    Mann, J.

---

[13] Bragg argues that if he did not preserve the issue for appeal, then his trial counsel was ineffective for failing to cite to CrR 8.3 in his motion to exclude the DNA evidence. Although it is possible that trial counsel's performance was deficient for not citing the proper authority, because Bragg cannot show prejudice, we need not reach this issue.

[14] Because we are reversing, we need not reach Bragg's argument that trial court erred in denying his motion for a mistrial and by imposing consecutive sentences and discretionary supervision fees. And we further hereby deny as moot any and all pending motions.

24